Gordon Lee BRADFORD,
Petitioner–Appellant,

v.

John P. WHITLEY, Warden, Louisiana
State Penitentiary, Respondent–
Appellee.

No. 90–4640.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1992.

Rehearing Denied March 23, 1992.

Sarah Duncan, San Antonio, Tex. and Fulbright & Jaworski, William J. Boyce, Houston, Tex. (court appointed), for petitioner-appellant.

Richard Weimer, Asst. Dist. Atty., Lafayette, La. and William J. Guste, Jr., Atty. Gen., Baton Rouge, La., for respondent-appellee.

Before POLITZ, Chief Judge, BROWN and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Gordon Lee Bradford appeals the district court's denial of his petition for a writ of habeas corpus stemming from his 1982 conviction by a Louisiana jury for attempted manslaughter and armed robbery.[1] Bradford challenges his continued confinement on several grounds, but his chief complaint is that the prosecution violated his privilege against self-incrimination by using his confession against him at trial in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1980). Because this and all of Bradford's other assignments of error are without merit, we affirm the decision of the court below denying his petition.

## I.

### BRADFORD'S CONFESSION

In his brief, petitioner asserts "[t]he most damaging assault on Bradford's rights stems from the admission and use of an improperly obtained confession at trial"—a confession he made while in custody at the police station following his arrest, and after he had twice asked to speak with an attorney as provided by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[2] Lafayette police twice read Bradford his *Miranda* rights; each time, the suspect told them he wanted to

---

1. The grisly events of Bradford's crime are recounted in *State v. Palmer,* 447 So.2d 1159, 1162–63 (La.App. 3d Cir.1984). Bradford was sentenced to 10.5 years imprisonment at hard labor on the attempted manslaughter conviction, to run concurrently with a sentence of 49.5 years at hard labor, without benefit of parole, probation or suspension of sentence, on the attempted armed robbery conviction. *Id.* at 1162.

2. *Miranda* held that once an individual in custody invokes his right to counsel, police interrogation "must cease until an attorney is present"; at that point, "the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." *Id.* 384 U.S. at 474, 86 S.Ct. at 1627.

speak with an attorney. Nevertheless, following further conversations with the police, Bradford agreed to tape-record a confession.

Determining who initiated the conversation after Bradford invoked his right to counsel is essential to a Fifth Amendment inquiry. *Edwards*, a decision aimed at preventing police from pressuring defendants into waiving their previously asserted *Miranda* rights, recognized that it is "inconsistent with *Miranda* and its progeny for the authorities, *at their instance,* to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Edwards*, 451 U.S. at 485, 101 S.Ct. at 1885 (emphasis added). Accordingly, *Edwards* held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated interrogation even if he has been advised of his rights." *Id.* at 484, 101 S.Ct. at 1884–85. A suspect who requests an attorney, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" *Id.* at 484–85, 101 S.Ct. at 1885 (emphasis added).[3]

In this case, the state court, after a suppression hearing, declined to prevent introduction of Bradford's confession. The federal district court adopted a magistrate's finding, based on the state court record,

that Bradford re-initiated the discussion with the police. *See Plazinich v. Lynaugh,* 843 F.2d 836 (5th Cir.1988). We decline, however, to pursue the question who "initiated" the conversation heading to Bradford's confession, because it was not introduced in the state's case in chief against Bradford.

While *Edwards* prevents the prosecution from using Bradford's confession as substantive evidence, it is well-settled that his statement may still be introduced to impeach his false or inconsistent testimony. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Harris*, Chief Justice Burger explained: "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Id.* at 225, 91 S.Ct. at 645. *See also Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975) (Blackmun, J.) ("[T]he shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances.").

Most recently, the Court held that the prosecution may use a defendant's post-arraignment statements for impeachment purposes even when those statements were obtained in contravention of the defendant's Sixth Amendment right to counsel. *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990).[4] *Harvey* recognized the need to safeguard the defendant's right to counsel while preventing him from committing perjury and

---

**3.** The Court has since voiced its support of the *Edwards* per se rule. Most recently, in *Minnick v. Mississippi,* — U.S. —, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), the Court held that where the accused has requested and been provided with an attorney, the police may not later reinitiate their interrogation in an interview in which the accused is compelled to attend without counsel. "In our view, a fair reading of *Edwards* and subsequent cases demonstrates that we have interpreted the rule to bar police-initiated interrogation unless the accused has counsel with him at the time of questioning," Justice Kennedy wrote for the majority. "Whatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interrogation must cease, and officials

may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Id.* 111 S.Ct. at 491.

**4.** The Sixth Amendment counterpart to the *Edwards* prophylactic rule is *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), which held that after a defendant requests assistance of counsel, any waiver of Sixth Amendment rights given in a police-initiated discussion is presumed invalid. *Jackson* similarly provides that evidence obtained pursuant to such a waiver is inadmissible in the prosecution's case-in-chief. *Id.* at 636, 106 S.Ct. at 1411. Both *Edwards* and *Jackson* are rooted in *Miranda.* "*Jackson* simply superimposed the Fifth Amendment analysis of *Edwards* onto the Sixth

thus undermining the integrity of the trial. When a defendant chooses to take the stand, he assumes an obligation to speak truthfully. That the government may have resorted to unconstitutional means to obtain a confession does not mean the defendant is justified in turning the illegality to his advantage, thereby preventing the prosecution from exposing his prior inconsistent statements at trial. *Id.*

Here, after Bradford chose to testify in his own defense, the state used the confession only for impeachment purposes on three occasions during cross-examination. When the prosecution completed its cross-examination, Bradford's attorney prevailed upon the trial judge to play a tape recording of Bradford's entire confession for the jury.[5] The trial record reveals that Bradford's counsel was concerned that the written transcript, which had been prepared by the state and which used the word "INAUDIBLE" at several points during the interrogation, was incomplete and might mislead the jury. By offering to play the tape of the confession following Bradford's direct testimony and cross-examination, Bradford's counsel hoped to persuade the jury, as he stated during his closing argument, that the defendant "was tired, he was beat, he was talking low, he was scared, and he was just kind of giving out statements." For our purposes, the key point is that it was Bradford, and not the prosecution, that offered the confession into evidence. Under these circumstances, *Harris*, and not *Edwards*, is decisive.

## II.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner next argues that because a Louisiana appeals court found that his

prosecution violated the Double Jeopardy Clause, his attorney's failure to raise a double jeopardy defense at trial deprived him of the effective assistance of counsel. Bradford was prosecuted for attempted first-degree murder and the underlying felony of attempted armed robbery. The jury found him guilty of attempted manslaughter, the responsive crime to the charge of attempted first-degree murder, as well as of attempted armed robbery. A Louisiana appellate court vacated Bradford's attempted manslaughter conviction after finding that he was twice put in jeopardy when he was prosecuted for both first-degree murder and the underlying offense of armed robbery. *State v. Bradford*, 514 So.2d 534, 535 (La.App. 3d Cir.1987).[6]

The thrust of petitioner's argument is as follows: Had his counsel raised a double jeopardy objection at trial, the state would have probably opted to prosecute him for the "more serious offense" of attempted first-degree murder instead of attempted armed robbery, which in turn would have likely resulted in an attempted manslaughter conviction. Because an attempted manslaughter conviction carries a less serious penalty than attempted armed robbery, "Bradford would be looking at release in a few short months by this time—rather than another 40 years of hard labor."

We are not persuaded. As the state correctly observes, there is some question whether attempted first-degree murder is in fact a more serious offense than attempted armed robbery; the latter is punishable for nearly as long (49.5 years instead of "not more than fifty (50) years) and—unlike attempted first-degree murder—is without benefit of parole, probation

---

Amendment." *Harvey*, 494 U.S. at 350, 110 S.Ct. at 1180.

5. Although the government did introduce an edited transcript of the confession prior to Bradford's testimony, that transcript was admitted solely for use at the suppression hearing on the second day of the trial and was not presented to the jury.

6. Louisiana law provides that in double jeopardy cases where the defendant has been convicted of multiple punishments for the same criminal conduct, "the appropriate procedure at the appellate level is to eliminate the effect of the judgment as to the less severely punishable offense." *State v. Doughty*, 379 So.2d 1088, 1091 (La.1980). Accordingly, the court vacated Bradford's conviction and sentence for attempted manslaughter, which carried the less severe penalty of the two offenses. *Bradford*, 514 So.2d at 535.

or suspension of sentence. *Compare* La. Rev.Stat.Ann. §§ 14:31 and 14:27 D(1) to §§ 14:64 and 14:27 D(3).

██ More fundamentally, under *Strickland v. Washington*, 466 U.S. 668, 693–94, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), a petitioner must show that his trial attorney made errors so serious that he failed to function as counsel guaranteed by the Sixth Amendment, and that petitioner was denied a fair and reliable trial as a result. Bradford has not met this burden. The scenario posited in petitioner's brief is speculative at best, and there is no evidence that his counsel would have better served Bradford by pursuing a trial strategy that would have forced the state to rely solely on the attempted first-degree murder charge.

As it so happened, Bradford was convicted of attempted manslaughter instead, but the clarity of hindsight may reveal only part of the story. It is equally plausible to argue that the jury may have decided to convict Bradford of the less serious offense of attempted manslaughter, instead of attempted first-degree murder, in view of the more severe penalty it imposed by also finding him guilty of attempted armed robbery. Had the jury been faced solely with the attempted first-degree murder charge, and with no attempted armed robbery count, it might not have returned the attempted manslaughter conviction. While this, too, is speculative, it shows that petitioner's putative chain of events, which supposedly stem from the unprofessional conduct of his trial counsel, are too indefinite to show prejudice. *See Murphy v. Puckett*, 893 F.2d 94, 96 (5th Cir.1990) (under *Strickland*, trial counsel's errors must be both unprofessional and create a reasonable probability that the result of the proceeding would have been different). Because Bradford fails to show prejudice by his counsel's failure to raise the double jeopardy issue, his ineffective assistance of counsel claim does not entitle him to relief.

### III.

### BRADFORD'S SENTENCE

██ Petitioner further contends his prison sentence is so excessive that it amounts to cruel and unusual punishment under the Eighth Amendment. The trial judge sentenced Bradford to the maximum penalty allowed by Louisiana law: 49.5 years imprisonment at hard labor, without possibility of parole, probation or suspension of sentence. Bradford has already argued unsuccessfully on direct appeal that his sentence was excessive under the Louisiana constitution. *See Palmer*, 447 So.2d at 1169. Renewing his claim that "[t]his sentence is excessive under any measure," Bradford would have this court reverse his punishment as violative of the proportionality requirement set forth in *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983).

This argument, which rests largely on petitioner's claim that he was "hardly a career criminal," is spurious. Significantly, the *Solem* analysis has been replaced by the Court's recent decision in *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), which, while preserving a constitutional proportionality requirement, also focuses almost exclusively on a comparison of the gravity of the offense and the harshness of the punishment. *See McGruder v. Puckett*, 954 F.2d 313 (5th Cir.1992) (forthcoming). Bradford's punishment was hardly disproportionate. At the sentencing hearing, the trial judge noted that Bradford had subjected his victim, Paul Moores to "torture for an extended period of time," so that "Moores would probably have suffered less had he been murdered." Calling Bradford's crime "one of the most brutal offenses that the Court has heard or has seen both as an Assistant District Attorney, when I did that, and also as a Judge," the court sentenced him to the maximum penalty under Louisiana law. The sentence was harsh, but so was the crime. Beyond comparing his offense to an armed robbery for which the victim previously served twelve years in a California prison, petitioner makes no showing that his punishment was so disproportionate as to violate the Eighth Amendment.

### IV.

### BRADFORD'S TRIAL

Finally, petitioner takes exception to several aspects of his trial, claiming the judge

erred in admitting into evidence bloodstained clothing allegedly seized in violation of his Fourth Amendment rights; that the court's decision to prevent him from cross-examining the victim on a related civil lawsuit violated the Confrontation Clause; and that the prosecutor made improper remarks during closing argument that denied petitioner a fair trial. We reject these claims and address each in turn.

First, the Louisiana appellate court specifically found that Bradford was unable to show a right to privacy in the blood samples taken from his clothing and boots at the time of his arrest; the government was therefore justified in seizing them in order to prevent the destruction of evidence. *See Palmer*, 447 So.2d at 1164–65. That court also held that the trial judge acted properly in refusing to allow Bradford's counsel to cross-examine the victim regarding a civil suit Moores had filed against a cab company for failing to transport him immediately following the offense. *Id.* at 1165–66. The Confrontation Clause was not violated because the trial court retains wide latitude to impose reasonable limits on cross-examination when the defendant is inquiring into the potential bias of a prosecution witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Taking Moores's testimony on balance, we do not believe the jury would have received a significantly different impression of his credibility had defense counsel been permitted to cross-examine him on this subject. *Id.* at 680, 106 S.Ct. at 1436.

Finally, petitioner asserts that the prosecutor's closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 641, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Specifically, he contends, "the prosecution opine[d] in closing argument that Bradford was a liar." This falls short of a due process violation,

just as the *Darden* prosecutor who referred to the defendant as an "animal" during closing argument did not violate his rights. 477 U.S. at 179, 106 S.Ct. at 2410. As we have recently warned: "We must view the prosecutor's statement in light of [Bradford's] entire trial, for 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's arguments standing alone.'" *United States v. Park*, 947 F.2d 130, 138 (5th Cir.1991) (quoting *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)). We agree with the magistrate's observations that while the prosecutor may have accused Bradford of lying, these comments "were neither persistent nor pronounced when considered within the context of the entire closing argument," and they did not violate his substantive rights.

## V.

## CONCLUSION

For the foregoing reasons, the judgement of the district court is AFFIRMED.