Gary CRIDER, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 06SC799.

Supreme Court of Colorado,
En Banc.

June 2, 2008.

Rehearing Denied June 30, 2008.*

* Chief Justice Mullarkey, Justice Martinez and Justice Bender would grant the Petition.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Colorado Attorney General, Wendy Ritz, First Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Crider sought review of the court of appeals' judgment affirming his convictions for attempted second degree murder and first degree assault. The court of appeals found that the district court erred in permitting the prosecuting attorney to refer to him during rebuttal closing argument as having lied to the jury in specific portions of his testimony. Under the circumstances of this case, however, it found the error to be harmless.

Although it is improper for an attorney to tell a jury that a witness has lied to them or to characterize the witness's testimony as a lie, the court of appeals applied the appropriate standard of review for harmlessness and correctly found that the error in this case did not warrant reversal. Its judgment is therefore affirmed.

## I.

The defendant, Gary Crider, was charged with attempted first degree murder and first degree assault, for repeatedly striking his neighbor, Robert Gaudio, in the head with a hammer. He was acquitted of attempted first degree murder but was convicted of attempted second degree murder and first degree assault. He was sentenced to concurrent terms of eighteen years in prison.

The defendant and the victim both testified at trial and gave widely differing accounts of what transpired. In addition to the victim, the prosecution also presented the testimony of three witnesses to the latter part of the incident; several police officers, who responded to the emergency call, investigated the scene, and/or arrested the defendant; and the physician who provided emergency care for the victim.

The victim testified that the defendant, a neighbor in the same apartment complex with whom he had had only brief conversational exchanges in the past, came to his apartment asking to use his phone; and after chatting about golf and going into the kitchen for a glass of water, suddenly and without provocation attacked the victim with a hammer, striking him a number of times in the head. The victim described the two as wrestling around on the floor before he eventually managed to expel the defendant from the apartment, only to have him return and resume his attack as soon as the victim retreated to the kitchen to staunch the profuse bleeding from his head. According to the victim's account, he eventually managed to escape to the front lawn, where he fell and was forced to assume a fetal position in an attempt to ward off the barrage of hammer blows, which the defendant continued to inflict upon him.

One of the witnesses testified that he heard screaming and saw one man standing over another and continuously hitting him in the head with a hammer, with blood visibly flying into the air. When he yelled "police," the assailant fled, and although the witness initially gave chase, he quickly returned to assist the victim. At the same time, the witness's roommate called 911. A third witness testified to seeing the two figures from a distance, and when the one fled, the witness indirectly pursued him, cutting him off and tackling him, and unsuccessfully tried to return him to the scene. The witness testified that before the assailant got away, he demanded to know whether the witness had seen what the other man had done to him.

The victim was taken to the hospital and treated for multiple lacerations on his head and hands. His wounds required between sixty and seventy stitches, and the treating physician determined that he lost about eight percent of his blood volume. The defendant was arrested at his residence several days later, without having complained or otherwise reported the incident to the police. The arresting officer also testified that the defendant showed no signs of facial injuries, despite his testimony that the victim had initially struck him in the mouth with the hammer.

The defendant defended against the charges on grounds of provocation and self-defense. In sharp contrast to the victim, the defendant testified that he was in the victim's apartment at the victim's request, to be repaid money the victim had borrowed from him. He claimed that when the victim indicated his inability to repay the loan after all, and the defendant pressed him for repayment, the victim threatened the defendant with a hammer. After himself being struck in the mouth and finally wresting the hammer from the victim, the defendant admitted striking the victim with it several times, but only in the course of defending himself. The defendant explained the continuing struggle and the actions and movement of both men to the front lawn in terms of his own attempts to escape from the victim's unrelenting attack, and he further explained that only after he finally managed to gain the upper hand, did he "snap" and begin hitting the victim with the hammer. Although their descriptions differed widely, both men gave detailed accounts of the progress of the struggle and their respective positions, movements, and motivations.

In closing argument, both counsel relied on photographs of the scene to corroborate one or the other version of the events. During her closing argument, defense counsel attempted to demonstrate that the presence, and absence, of blood stains in various police photographs of the scene contradicted the victim's account, telling the jury that "pictures do not lie." The prosecutor's objection that the photographs had been excluded from evidence at the insistence of the defendant was overruled with the explanation that it would be sufficient for the prosecution to be given an opportunity to respond in its rebuttal argument. In his rebuttal closing, the prosecuting attorney did respond by arguing that particular blood spatter evidence visible in the photographs actually contradicted key portions of the defendant's, rather than victim's, testimony.

The prosecuting attorney went further, however, and expressly drew the inference for the jury that the defendant therefore lied to them. Over contemporaneous objections that his argument amounted to an expression of personal opinion, the prosecutor characterized the defendant as lying or as having lied, and portions of his testimony as being lies, with regard to a handful of statements the prosecutor asserted to be indisputably contradicted by the blood evidence. Defense counsel's objections were overruled by the trial court on the grounds that each of these characterizations by the prosecuting attorney was directly related to specific physical evidence and therefore could not have been misunderstood as an expression of his personal opinion about the defendant's veracity or a suggestion that he was privy to information of which the jury was unaware.

On direct appeal, the court of appeals found the prosecutor's argument improper and the trial court's ruling erroneous, although it considered both understandable in light of subsequently overruled case law in the jurisdiction. It concluded, however, that reversal was not warranted in this case because it was highly unlikely, in light of the overwhelming evidence of the defendant's guilt, that this argument affected the jury's verdict.

The defendant petitioned for a writ of certiorari.

## II.

In this jurisdiction it is improper for a lawyer to use any form of the word "lie" in characterizing for a jury a witness's testimony or his truthfulness. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1050–51 (Colo.2005). As we have recently made abundantly clear, such usage is disapproved for a number of reasons. It is prohibited not only because it poses a risk of communicating the lawyer's personal opinion about the veracity of a witness and implying that the lawyer is privy to information not before the jury, but also simply because the word "lie" is an inflammatory term, likely (whether or not actually designed) to evoke strong and negative emotional reactions against the witness. *See id.; see also* Colo. RPC 3.4(e) (barring counsel from offering "personal opinion, personal knowledge, or inflammatory comments").

Although the appellate courts of this jurisdiction have long criticized jury arguments

including the word "lie" or related terms, *see, e.g., Wilson v. People,* 743 P.2d 415, 420 (Colo.1987); *People v. Salter,* 717 P.2d 976, 978 (Colo.App.1985); *People v. Trujillo,* 624 P.2d 924, 925–26 (Colo.App.1981); some case law in the jurisdiction had, until very recently, appeared to sanction the characterization of witness testimony as a lie, as long as the attorney's argument was related to specific evidence that tended to demonstrate that to be the case. *See People v. Dashner,* 77 P.3d 787, 792 (Colo.App.2003) (holding that prosecutor's argument that defendant lied on the stand was not error where prosecutor pointed to specific evidence refuting the defendant's testimony, which supported an inference that defendant was untruthful); *see also People v. Kerber,* 64 P.3d 930, 935 (Colo.App. 2002) (relying on other jurisdictions for proposition that prosecutors may refer to statements and testimony as a lie if the evidence supports that inference and the prosecutor relates the argument to specific evidence). As noted by the court of appeals, these precedents had not yet been overruled at the time of the trial in this case. While their continuing vitality at the time suggests why the prosecuting attorney carefully structured his argument as he did, and why the trial court overruled the defendant's objection to it, nevertheless permitting the use of the terms "lie," "lying," and "lied" was no less erroneous.

■ Error in the trial process, as distinguished from structural error, however, does not warrant the reversal of a conviction if it can be shown to have been harmless. *Arteaga–Lansaw v. People,* 159 P.3d 107, 110 (Colo.2007). With regard to prosecutorial misconduct in closing argument in particular, where the doctrine of harmless error has at times been criticized as lacking effectiveness, we have expressly rejected any per se rule requiring reversal as a sanction or deterrent, in favor of the case-by-case consideration of prejudice that is applicable to other non-structural errors. *See Harris v. People,* 888 P.2d 259, 267 n. 7 (Colo.1995); *cf. United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (finding use of Supreme Court's supervisory powers inappropriate in the context of closing argument, where competing interests of the criminal justice system are better protected by the harmless error doctrine).

■ We have evaluated the harmfulness of trial errors in varying terms, but we have consistently held that even properly objected-to trial error will be disregarded as harmless whenever there is no reasonable probability that it contributed to the defendant's conviction. *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001); *Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000). If the error amounts to a constitutional violation, or is of constitutional dimension, however, before disregarding it as harmless, a reviewing court must be convinced beyond a reasonable doubt of its lack of prejudicial impact. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *People v. Miller,* 113 P.3d 743, 748 (Colo.2005); *People v. Fry,* 92 P.3d 970, 980 (Colo.2004).

■ Although virtually any trial error capable of prejudicing a criminal defendant could in some sense be characterized as affecting his right to a fair trial, neither this court nor the Supreme Court has ever designated broad categories of error, such as prosecutorial misconduct or even prosecutorial misconduct in closing argument, as error of constitutional magnitude. Depending upon the way in which argument is improper, and the particular risk it poses or right upon which it infringes, prohibited comments during closing argument may well, but need not, amount to constitutional error. Impermissible comment on a defendant's exercise of a specific constitutional right, such as his right not to testify, *see Chapman,* 386 U.S. at 24–25, 87 S.Ct. 824, his right to be tried by a jury, *see People v. Rodgers,* 756 P.2d 980, 985 (Colo.1988), or his right to post-arrest silence, *see People v. Taylor,* 159 P.3d 730, 740 (Colo.App.2006), have been addressed as constitutional error.

But exceeding less well-defined ethical boundaries by threatening to mislead a jury with expressions of personal opinion or inflammatory comments is broadly accepted as being subject to the discretion of the trial court, which does not rise to the level of constitutional error. *See United States v. Martin,* 815 F.2d 818, 823 (1st Cir.1987)

(vouching subject to harmless error analysis); *People v. Hernandez*, 267 Ill.App.3d 429, 206 Ill.Dec. 1, 644 N.E.2d 769, 776 (1994) (prosecutor's improper and inflammatory remarks comparing defendant to Al Capone subject to harmless error analysis); *People v. Brosnan*, 31 A.D.2d 975, 299 N.Y.S.2d 263, 266 (1969) (prosecutor's improper and inflammatory remarks characterizing defendant as an "animal," "liar," and "beast" subject at most to harmless error standard). Although such questions have generally arisen in this jurisdiction in the context of unobjected-to argument, this court had regularly undertaken a plain error analysis, rather than a harmless constitutional error analysis, long before we resolved in *People v. Miller* that a contemporaneous objection will be required even for error of constitutional magnitude. *Compare Wilson*, 743 P.2d at 419 (applying plain error analysis to prosecutor's remarks that defendant and his wife "lied" in their testimony), *and Harris*, 888 P.2d at 267 (applying plain error analysis to prosecutor's improper comparison of defendant to Saddam Hussein), *with Rodgers*, 756 P.2d at 984 (applying harmless beyond a reasonable doubt analysis to prosecutor's improper comment on defendant's exercise of his constitutional right to jury trial).

■■■ We have often indicated that the question of prejudicial impact cannot be reduced to a specific set of factors, determinative in every case, but instead that the likelihood of prejudice must be evaluated in the totality of the circumstances, on a case-by-case basis. While the strength of admissible evidence supporting the verdict is clearly one important consideration, *see Domingo–Gomez*, 125 P.3d at 1050, so too is the specific nature of the error committed and the nature of the prejudice or risk of prejudice associated with it. *See Golob v. People*, 180 P.3d 1006, 1013–14 (Colo.2008). Here not only was there strong evidence supporting the jury's verdicts, but the likelihood that they were improperly affected by the prosecutor's choice of language, under the circumstances of this case, was negligible.

In this case, physical evidence and the testimony of uninvolved bystanders, as well as the admissions of the defendant himself, left no doubt that he continued beating the victim with a hammer, on the front lawn of their apartment complex, until he was driven off by the bystanders. His testimony merely raised a question whether he was at that point continuing an attack he had begun inside or was himself initially attacked by the victim and only lost control and turned on the victim as the result of legally cognizable provocation. The prosecutor's characterizations of the defendant's testimony in rebuttal closing were expressly directed at the irreconcilability of certain of his assertions and the presence or absence of blood stains, smearing, and imprints in the photographs taken of the scene shortly after the incident.

The prosecutor walked the jury through the testimony, explaining why the victim's account of events was not inconsistent with the blood evidence and why the defendant's was. He recounted a number of specific movements described by the defendant and drew the jury's attention to areas in which blood, or smears in blood, should but did not appear. Most critically, he focused on the defendant's assertion that when he tried to leave the apartment and was followed by the victim in a rage, he ducked and the victim tumbled over him, with both men landing in the door area and struggling for the hammer. The prosecutor emphasized that the absence of blood on the concrete where, according to the defendant's account, it should have been, proved that the defendant was lying.

Although the language he chose has been disapproved as posing too great a risk, in the general case, of misleading or inflaming the passions of the jury, the prosecutor carefully structured his argument to avoid any suggestion that he was offering his personal opinion, based either on some greater experience in judging veracity or, even worse, on some greater knowledge of what actually occurred. For purposes of evaluating its impact, as distinguished from its propriety, it was significant that the prosecutor did not refer to the defendant as a "liar;" and when he did address the defendant's character for truthfulness generally, the prosecutor again carefully reminded the jury only of the inferences they were permitted to draw from the defen-

dant's two prior felony convictions. *See* § 13–90–101, C.R.S. (2007).

Because the impropriety in this case was limited to the prosecutor's use of an inflammatory term, as distinguished from drawing the jury's attention to the contradictory physical evidence in more neutral terms, the task of assessing the harmfulness of the error is similarly limited. The error must therefore be accounted harmless if there is no reasonable probability, in light of the physical evidence, that the differences between arguing that the defendant's contradictory statements were lies and arguing simply that they could not reasonably be believed, contributed to the jury's verdict. Viewed against this backdrop, we are quite convinced, as was the court of appeals, that there is no reasonable probability that the improper use of the words "lie," "lying," or "lied" contributed to the jury's verdicts in this particular case. *Cf. Moore v. United States*, 934 F.Supp. 724, 728–29 (E.D.Va. 1996) (collecting federal jurisdictions declining to reverse for using the word "liar" or its variants, as long as inference was justified by the evidence and prosecutor did not "suggest that this is a personal opinion or that it is based on extra-record government information").

After our holding in *Domingo–Gomez*, and again today, there should be no question that it is improper in this jurisdiction for an attorney to characterize a witness's testimony or his character for truthfulness with any form of the word "lie." This remains true regardless of the extent to which that testimony is contradicted by demonstrative or scientific evidence. A violation of this prohibition, although sanctionable in other ways, however, does not warrant reversal if it was harmless.

### III.

Under the circumstances of this case, reversal of the defendant's convictions is not warranted. The judgment of the court of appeals is therefore affirmed.

Justice BENDER dissents, and Chief Justice MULLARKEY and Justice MARTINEZ join in the dissent.

Justice BENDER, dissenting.

While I agree with the majority that the prosecutor's repeated assertion that the defendant lied to the jury was improper, I disagree with the majority's holding that this error was harmless. I believe that there is a reasonable probability that the prosecutor's misconduct contributed to the defendant's conviction, and therefore I respectfully dissent.

Initially, I note that the majority's characterization of the prosecutor's rebuttal closing argument minimizes the egregiousness and the repetitive nature of the prosecutor's numerous violations. *See* maj. op. at 41. The prosecutor used some form of the word "lie" at least 13 times over the course of the rebuttal. A sampling of the prosecutor's statements include:

And that's how you know this man is lying to you, and that is what he did, he took an oath and he lied.

He lied. He lied. . . . He's lying to you.

He's lying to you about something else, he's lying to you about them rolling around out there on the concrete.

The lack of evidence proves he is lying to you and [the victim] is telling you the truth.

Again, he's lying to you.

The blood evidence supports the victim and shows the defendant is lying.

This man is guilty, he is guilty as charged. He got up there and tried to give you one of his excuses and he lied to you.

In addition, the prosecutor stated twice that the defendant "was not telling you the truth," and characterized the defendant's testimony as "ridiculous, not true." Further, while the prosecutor purported to remind the jury to consider Crider's two felony convictions only for the purpose of weighing credibility, his description of Crider as a "two-time loser" appears to border on improper use of character evidence.

I highlight these statements to make clear that the prosecutor's comments concerning the defendant's testimony as a lie were not isolated but rather permeated the entire re-

buttal argument, which is, of course, the last argument the jury hears before deliberation.

We have previously noted that the prosecutor's obligation to refrain from improper methods in pursuit of a conviction is rooted in the defendant's right to a fair and impartial jury as guaranteed by the United States and Colorado Constitutions. *Harris v. People*, 888 P.2d 259, 263 (Colo.1995). We have also held that a jury that has been misled by improper argument cannot be considered impartial. *Id.* at 264. Thus, while I agree with the majority that the weight of precedent from other jurisdictions holds that prosecutorial misconduct should not be reviewed under the constitutional harmless error standard, but rather under the general harmless error standard, I would apply the harmless error standard consistent with our earlier case law pronouncements which reflect the need to sanction this type of prosecutorial misconduct in order to ensure an accused's right to a fair and impartial trial.

Further, I disagree with the majority's articulation of the harmless error standard and its application in this case. The standard discussed by the majority improperly and unnecessarily narrows the prism of our analytical appellate review and is applied erroneously here on the issue of provocation.

The majority correctly notes that the question of prejudicial impact must be evaluated on a case-by-case basis and cannot be reduced to a specific set of factors. *See* maj. op. at 43. However, the majority posits that we must consider "the specific nature of the error committed and the nature of the prejudice or risk of prejudice associated with it." *See* maj. op. at 43. This language, which is purportedly derived from *Golob v. People*, 180 P.3d 1006 (Colo.2008), does not actually appear in that case and is, in my view, an inaccurate paraphrase of our holding in that case. The majority adds language to the harmless error standard which unnecessarily narrows the standard's already limited deterrent effect on prosecutorial misconduct. *See Harris*, 888 P.2d at 267 n. 7 ("[E]ven the application of the doctrine of harmless error in cases wherein prosecutors have engaged in improper argument has been criticized as too

often rewarding such conduct while purporting to deter it.").

An error is harmless if it "does not affect substantial rights" of the defendant. Crim. P. 52(a). The error may be disregarded "if there is not a reasonable probability that the error contributed to the defendant's conviction." *Salcedo v. People*, 999 P.2d 833, 841 (Colo.2000) (quotations omitted). Thus, the proper inquiry is "whether the error substantially influenced the verdict or affected the fairness of the trial proceedings," *id.*, and not merely whether there was sufficient evidence to support the verdict without the impropriety. *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo.1989). If the error leaves the reviewing court "in grave doubt" as to the fairness of the proceedings, the conviction cannot stand. *People v. Welsh*, 80 P.3d 296, 310 (Colo.2003).

In this case, the jury was instructed to consider both whether Crider acted in self defense and whether he acted under provocation. As to the issue of self defense, I agree that the error was likely harmless. Crider himself admitted that after the two men struggled for the hammer, the victim ended up on the ground, and that he repeatedly struck the victim on the head with the hammer. Eyewitness accounts of Crider's conduct also negate the self-defense argument, at least after the attack continued outside the apartment. Additionally, the physical evidence, including the lack of any serious injury to Crider, negates this claim that the victim struck the first blow with the hammer.

However, as to the issue of provocation, I would conclude that the error was not harmless. First, on the issue of provocation, the credibility of the witnesses' testimony was of paramount importance. The claim went to the jury based on the word of one man against another regarding events that occurred while they were inside the apartment and which cannot be corroborated by physical evidence or eyewitness testimony—a situation in which the jury's assessment of the witnesses' credibility may be the deciding factor. The prejudice of the prosecutor's statements that Crider was lying takes added significance under these circumstances. *See Wilson v. People*, 743 P.2d 415, 420 (Colo.

1987) (stating that where issue of credibility was of critical significance, prosecutor's characterization of witnesses' testimony as lies has added significance). The jury's decision on the issue of provocation turned on whether the jury chose to believe the testimony of Crider or the victim. In the absence of physical evidence or eyewitness testimony, this decision was not clear cut. Even the trial court noted that neither version of the events made sense. This would indicate that the victim's testimony was something less than compelling. Thus, it is difficult to conclude that the prosecutor's statements did not influence the jury on this matter.

Second, while it is improper for any attorney to characterize witness testimony as a lie, this error carries a greater risk of prejudice when committed by a prosecuting attorney because "the prosecutor represents the State and the People of Colorado," and the jury may "give greater weight to the prosecutor's arguments because of the prestige associated with the office." *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo.2005).

Third, this is not a case where the prosecutor's improper comments were isolated. In *Wilson,* we held that it was reversible error for the prosecutor to call the defendant and defense witnesses liars eight times in a case that turned on whether to believe the victim or the defendant. 743 P.2d at 421. In that case, there were no contemporaneous objections, and the conviction was reversed under the plain error standard of review—a higher bar than the harmless error standard in this case. Here, by contrast, the prosecutor used a form of the word "lie" at least thirteen times, and he did so in the rebuttal closing argument immediately before the jury left to deliberate. The repeated use of the improper argument at a time when the defendant had no opportunity to respond makes the misconduct particularly egregious.

For all of these reasons, I cannot say there is no reasonable probability that the prosecutor's misconduct in this case did not contribute to the jury's verdict finding no provocation. An error which prevents the jury from fully considering the issue of provocation, which mitigates the penalties for attempted second-degree murder and first-degree as-

sault, is reversible error. *See People v. Garcia,* 28 P.3d 340 (Colo.2001) (reversing defendant's conviction under plain error standard where trial court gave incorrect jury instruction on provocation). I would therefore reverse the court of appeals. Accordingly, I respectfully dissent.

I am authorized to state that Chief Justice MULLARKEY and Justice MARTINEZ join in this dissent.