Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 19, 2017

**2017 CO 70**

**No. 14SC340, <u>People v. Roman</u>—Jury Instructions—Lesser Included Offenses—
Harmless Error.**

The People sought review of the court of appeals' judgment reversing Roman's
conviction for first degree assault.  <u>See</u> <u>People v. Roman</u>, No. 11CA172 (Colo. App. Mar.
20, 2014).  The trial court instructed the jury on the lesser included offense of second
degree assault committed by intentionally causing bodily injury with a deadly weapon,
but it denied Roman's request for an additional lesser-included-offense instruction on
second degree assault committed by recklessly causing serious bodily injury with a
deadly weapon.  The court of appeals reversed, concluding both that the trial court
erred in denying Roman's requested additional lesser-included-offense instruction and
that the error was not harmless.

The supreme court reverses the judgment of the court of appeals because in light
of the evidence presented at trial and the instructions actually provided to the jury,
there was no reasonable possibility that the failure to instruct on reckless second degree
assault contributed to the defendant's conviction of first degree assault, and any error in
that regard would therefore have been harmless.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 70

### Supreme Court Case No. 14SC340
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA172

#### Petitioner:

The People of the State of Colorado,

v.

#### Respondent:

Darren Roman.

### Judgment Reversed
*en banc*
June 19, 2017

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
William G. Kozeliski, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent:**
Douglas K. Wilson, Public Defender
Nathaniel E. Deakins, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.

¶1 The People sought review of the court of appeals' judgment reversing Roman's conviction for first degree assault. See People v. Roman, No. 11CA172 (Colo. App. Mar. 20, 2014). The trial court instructed the jury on the lesser included offense of second degree assault committed by intentionally causing bodily injury with a deadly weapon, but it denied Roman's request for an additional lesser-included-offense instruction on second degree assault committed by recklessly causing serious bodily injury with a deadly weapon. The court of appeals reversed, concluding both that the trial court erred in denying Roman's requested additional lesser-included-offense instruction and that the error was not harmless.

¶2 In light of the evidence presented at trial and the instructions actually provided to the jury, there was no reasonable possibility that the failure to instruct on reckless second degree assault contributed to the defendant's conviction of first degree assault, and any error in that regard would therefore have been harmless. The judgment of the court of appeals is therefore reversed.

**I.**

¶3 Darren Roman was charged with attempted first degree murder and first degree assault, as the result of an incident in which the mother of his child suffered a knife wound to her neck and substantial cuts to her hands. He was convicted of first degree assault and sentenced to imprisonment for fifteen years.

¶4 The uncontested evidence at trial indicated that on June 7, 2009, the defendant and the victim were involved in a romantic relationship, shared an apartment, and had a son together. That day, while both individuals were at their home, the defendant

2

discovered a series of romantic text messages on the victim's cell phone between the victim and another man, some of which discussed the victim's plans to end her relationship with the defendant. At trial, the victim and the defendant provided substantially different accounts of what happened following this discovery.

¶5 The victim's testimony at trial and her statements made to the police shortly after the incident indicated that the defendant reacted angrily upon seeing the text messages and attacked her with a knife, threatening to kill her, pinning her on her bed, and slicing her neck. Her statements and testimony further indicated that although she fought the defendant off, she was unable to fully close the bedroom door against him, and when he forced the knife through the remaining opening in the doorway, she grabbed the blade in an attempt to ward off further injury, cutting her hands in the process. The prosecution also presented medical evidence to the effect that the victim's neck wound came dangerously close to cutting her jugular vein or carotid artery, which might have proved fatal, and that her hand wounds were deep enough to cut tendons, permanently impairing both her feeling in, and use of, her hands.

¶6 The defendant testified on his own behalf, denying that he attacked or made any attempt to stab the victim. Instead, he testified that he threatened to kill himself with the knife he was holding for that purpose, and that it was the victim who taunted and pushed him, ultimately cutting her hands on the knife while physically attacking him. The defendant further testified that upon seeing that the victim had cut herself, he dropped the knife, which she then retrieved and used to stab him in the hand. The

defendant's testimony and theory-of-the-case instruction denied that he cut the victim's neck or that she suffered any neck wound while he was present.

¶7    The trial court instructed the jury on the charged offenses, as well as the lesser included offenses, respectively, of attempted second degree murder and second degree assault committed by intentionally causing bodily injury with a deadly weapon. The defendant requested and was allowed an instruction embodying his theory of the case, which largely tracked his own testimony, denying that he caused any injury to the victim's neck, indicating that the victim's hands were injured accidentally when she pushed him and grabbed the knife he was holding, and indicating further that his own knife wound was caused by the victim when she picked up the knife and stabbed him with it. The defendant also tendered, among others, an instruction that presented the jury with the opportunity, if it were not satisfied that he was guilty of first degree assault, to find him guilty of either of two additional lesser included offenses. One of these additional lesser included offenses was an alternate way of committing second degree assault, by recklessly causing serious bodily injury to another person by means of a deadly weapon, and the other was third degree assault, committed by negligently causing bodily injury to another person with a deadly weapon. The trial court denied this instruction, finding that the evidence did not provide a rational basis to acquit of the charged offense and still convict of either of these two lesser offenses.

¶8    The jury returned verdicts of not guilty as to either attempted first or second degree murder. Rather than returning verdicts of not guilty of assault or finding the defendant guilty of only second degree assault, as its instructions permitted, however,

the jury returned a verdict of guilty of first degree assault, as charged. Judgment therefore entered, and the defendant was sentenced for first degree assault.

¶9     On direct appeal, the court of appeals reversed, finding both that the trial court erred in denying the defendant's requested instruction on reckless second degree assault and that the error was not harmless. With regard to the denial of the defendant's requested lesser-included-offense instruction itself, the intermediate appellate court relied on case law of its own that it considered analogous, as well as case law from this court concerning lesser-included-homicide instructions, to find that the defendant's testimony to the effect that he was holding a knife to threaten suicide and maintained possession of the knife as a physical altercation occurred with the victim was enough to provide a rational basis to support a conviction for recklessly causing the victim's injuries. With regard to harmlessness, the intermediate appellate court found that the erroneous denial of a lesser-offense instruction could be harmless only if the jury found the defendant guilty of a charged offense in lieu of an available lesser included offense, of which the erroneously denied offense was itself a lesser included offense.

¶10     The People petitioned for review of the court of appeals' determination that denying the defendant's tendered reckless-second-degree-assault instruction was not harmless, and the defendant cross-petitioned concerning the denial of his separately tendered instruction concerning provocation. We granted only the People's petition for a writ of certiorari.

## II.

¶11     In <u>Mata-Medina v. People</u>, 71 P.3d 973, 980 (Colo. 2003), we squarely rejected the contention that the harmless constitutional error standard should apply to the erroneous denial of a requested lesser-offense instruction, relying in part on jurisprudence of the United States Supreme Court withholding judgment on that question except where the error "forces the jury into an all-or-nothing decision between capital murder and innocence."  Instead, we held that "[w]hen the trial court errs in failing to give a jury instruction that the defendant requested and to which he was entitled, the appellate court reviews that error under a harmless error standard."  <u>Id.</u> Pursuant to this standard, as delineated in Crim. P. 52(a), a defendant is entitled to have his conviction reversed only if the error affected his substantial rights.

¶12     As we have only recently made clear, substantial evolution of the law governing reversible error, in both the jurisprudence of this court and that of the Supreme Court, and especially the Supreme Court's distinction between structural and trial error, now fully embraced in this jurisdiction, has led to the conclusion that a trial right impacted by the error in question can never be classified as "substantial" based solely on the nature of the error itself.  <u>See</u> <u>People v. Novotny</u>, 2014 CO 18, ¶¶ 14–27, 320 P.3d 1194, 1199–203.  Rather, a conclusion that a trial error has affected a substantial right of the defendant can only result from a case specific assessment of the likely impact of the error in question on the outcome of the litigation as a whole.  <u>Id.</u> at ¶ 27, 320 P.3d at 1203.  With regard to lesser included offenses in particular, as our finding of harmless error in <u>Mata-Medina</u>, 71 P.3d at 982–83, had already made clear, the erroneous denial

6

of a requested instruction constitutes trial, rather than structural, error, which does not necessarily affect a substantial right of the defendant and, therefore, does not necessarily warrant reversal.

¶13 Although Crim. P. 52, defining and prescribing the consequences of both harmless and plain error, is virtually identical to Fed. R. Crim. P. 52, and although we have increasingly come to rely on federal standards concerning the nature and reversibility of particular errors, see Novotny, ¶¶ 19–23, 320 P.3d at 1200–02, unlike the harmless constitutional error standard, we have never fully adopted the federal understanding of the appropriate standard for either plain or harmless error, see Krutsinger v. People, 219 P.3d 1054, 1063 (Colo. 2009). With regard to non-constitutional harmless error, in particular, we have not always articulated our conclusions in identical terms. Rather than attempt to reconcile any possible disparity of expression, however, it is enough here that objected-to trial error clearly must be classified as harmless if there is no reasonable probability, or possibility,[1] that it contributed to the defendant's conviction. Crider v. People, 186 P.3d 39, 42–43 (Colo. 2008).

¶14 In addition to making clear that the harmless error standard requires an evaluation of the likely impact of any error on the outcome of the proceeding, we have

---

[1] Unlike the United States Supreme Court, see, e.g., Strickler v. Greene, 527 U.S. 263, 289–91 (1999), this court has generally used the terms "reasonable probability" and "reasonable possibility" interchangeably with regard to the likely effect of an act or ruling on the result of a trial, see Krutsinger, 216 P.3d at 1063 (explaining that in Salcedo v. People, 999 P.2d 833, 841 (Colo. 2000), this court recast, without expressly acknowledging it, the "reasonable possibility" test for harmless error articulated in a prior decision as a "reasonable probability" standard).

also indicated that the question of prejudicial impact cannot be reduced to a specific set of factors. Id. at 43. While the strength of the evidence supporting a verdict is often an important consideration, so too is the specific nature of the error in question and the nature of the prejudice or risk of prejudice associated with it. Id. The possible prejudicial impact of erroneously denying a criminal defendant a lesser-offense instruction is therefore limited by the rationale and purposes for permitting him to present the jury with additional options in the first place.

¶15 We have long held that a defendant is entitled to have the jury apprised of his theory of the case as long as there is any evidence to support it, even if that theory is highly improbable and finds support only in the testimony of the defendant himself. People v. Nunez, 841 P.2d 261, 264–65 (Colo. 1992). Presenting the jury with a defendant's explanation of the evidence is considered so integral to his right to present a defense that we have required trial courts to help craft proper theory-of-the-case instructions rather than simply reject ones they consider improper. See Nunez, 841 P.2d at 265; People v. Moya, 512 P.2d 1155, 1156 (Colo. 1973). Depending on the nature of the defendant's theory and the evidence supporting it, he may also be entitled to instructions setting forth the statutory elements of either a crime or defense, permitting the jury to give effect to his theory by finding him guilty of no more than some less serious offense or by exonerating him altogether.

¶16 In this jurisdiction, a criminal defendant is entitled to an instruction permitting the jury to find him guilty of a lesser offense, whether included in the charged offense or not, where it is supported by the evidence and the defendant wants it. People v.

8

Rivera, 525 P.2d 431, 434 (Colo. 1974). In holding as we did in Rivera, we expressed the conviction that better trials and fairer verdicts would be insured by permitting the jury to consider and convict of a lesser offense presented by the defendant's theory of the case, rather than forcing it to choose between convicting of a greater charged offense of which it is unconvinced and acquitting the defendant altogether. Id.; cf. Keeble v. United States, 412 U.S. 205, 212–13 (1973) (finding defendant entitled to a lesser-included-offense instruction as protection against the risk of wrongful conviction on the greater charged offense despite some element remaining in doubt). Implicit in this rationale was not only a concern that juries might otherwise disregard their instructions and convict of a crime more serious than the one they actually believed to have been committed rather than acquit altogether, but also a concern that juries should be given an opportunity, when justified by the evidence, to give effect to a defendant's theory that he committed a crime less serious than the one with which he was charged.

¶17 With regard to charges of homicide, at least those including less culpable homicide offenses distinguishable largely by the mental state of the defendant, we have identified a third interest in presenting the jury with lesser-included-offense instructions. Although the standard of evidentiary support for a lesser-offense instruction is generally expressed as a rational basis to acquit of the greater and convict of the lesser offense, with regard to lesser homicide offenses, we have long required that instructions be given upon request, whenever there is some evidence, however slight, incredible, or unreasonable, tending to establish the lesser included offense. See Mata-Medina, 71 P.3d at 979 (citing People v. Shaw, 646 P.2d 375, 379 (Colo. 1982), and

9

Crawford v. People, 20 P. 769, 770 (Colo. 1889)).  With regard to this class of offenses, our holdings have consistently reflected a preference that it be left for the jury, under proper instructions, to consider the evidence and determine the "grade of crime" of which the defendant should be convicted, unless the record lacks any support whatsoever for conviction of that crime.  Shaw, 646 P.2d at 380; Read v. People, 205 P.2d 233, 235 (Colo. 1949).

¶18    In Mata-Medina, we addressed the question whether the erroneous denial of a defendant's requested instruction on criminally negligent homicide amounted to harmless error.  71 P.3d at 980–83.  Under the circumstances of that case, in which the jury considered but rejected a reckless manslaughter conviction in favor of second degree murder, we concluded that the error was indeed harmless for the reason that the jury necessarily, if only implicitly, rejected conviction of criminally negligent homicide. Id. at 982–83.  The jury's finding that the defendant caused the death of the victim knowingly rather than recklessly foreclosed any possibility that it could have found he did so only by acting with criminal negligence.  Id. at 983.  In holding as we did, however, we nowhere suggested that the erroneous denial of a requested lesser-included-homicide instruction, much less the erroneous denial of other than homicide lesser-included-offense instructions, could be found harmless only where guilt of the offense in question had been necessarily rejected by the jury.

¶19    Quite the contrary, although we suggested in Mata-Medina that our precedent would not permit a finding of harmlessness based solely on a jury's verdict of guilt on the charged offense, see id. at 980, we also noted, without disapproval, the holdings of

10

other jurisdictions to the effect that any prejudice associated with the erroneous failure to give a requested lesser-offense instruction would be vitiated by the jury's rejection of a comparable lesser included offense and finding of guilt as to the charged offense, id. at 983 n.9 (citing Commonwealth v. Chase, 741 N.E.2d 59, 66 (Mass. 2001), and Commonwealth v. Counterman, 719 A.2d 284, 304 (Pa. 1998)). While the rationale of these holdings in other jurisdictions may be persuasive with regard to the concern that, in the absence of some comparable lesser-offense option, juries might disregard their instructions and convict of a charged offense about which they are not fully convinced rather than acquit altogether, it cannot also vitiate the prejudice flowing from erroneously depriving the jury of an opportunity to accept and implement the defendant's theory that he merely committed a particular lesser offense. Therefore, in the event that a defendant is erroneously denied a requested instruction presenting the jury with an option to convict of a lesser included offense according to his theory of the case, more is required to demonstrate harmlessness than merely the rejection of a comparable lesser offense.

¶20    In this case, however, it can be fairly determined that there is no reasonable possibility the defendant was prejudiced by an erroneous rejection of his requested instruction on reckless second degree assault. By disregarding the comparable lesser included offense of second degree assault that was actually available to it, the jury clearly demonstrated that it did not find the defendant guilty of first degree assault simply because it had no less serious option short of acquittal and despite being unconvinced of his guilt of that offense. Similarly, there was no reasonable possibility

11

the jury could have accepted and implemented the defendant's theory of the case by convicting of reckless second degree assault in lieu of first degree assault, had that option been available to it, for the simple reason that it was never the defendant's theory that he committed reckless second degree assault or any other lesser offense of first degree assault—in both his testimony and his theory-of-the-case instruction the defendant steadfastly denied causing the victim's injuries.

¶21 The intermediate appellate court found a rational basis in the evidence to convict the defendant of recklessly "causing" the victim's injuries by simply arming himself with a knife, threatening to kill himself, and maintaining possession of the knife as a physical altercation occurred with the victim. Whether there was support for this scenario in the record, and whether evidence of such a scenario could provide a rational basis to convict the defendant of reckless second degree assault in any event, are matters not currently before this court. Even assuming the trial court erred in declining to give the defendant's requested instruction, in light of both the jury's rejection of the lesser included offense of which it had the option to convict and the defendant's testimony and theory of the case, there is nevertheless no reasonable possibility that the defendant was prejudiced by any inability of the jury to implement his theory of the case.

¶22 The defendant's testimony and theory-of-the-case instruction unequivocally and unwaiveringly asserted that he never undertook any voluntary action to either threaten or stab the victim. As the court of appeals appeared to acknowledge, in order to find him guilty of nothing more than recklessly assaulting the victim with a deadly weapon,

consistent with this theory of the case, the jury would be required to reason that by threatening to kill himself with a knife, the defendant disregarded a substantial and unjustifiable risk that the victim would challenge him to do so, would physically attack him, and would cut her own hands and neck on his knife by her own conduct. Whether it could satisfy the causation element of the crime in any event, in light of the physical evidence and diametrically opposed accounts of what transpired—neither of which remotely suggested this scenario—we find there to be no reasonable possibility that the jury would have engaged in such a chain of reasoning.

### III.

¶23 In light of the evidence presented at trial and the instructions actually provided to the jury, there was no reasonable possibility that the failure to instruct on reckless second degree assault contributed to the defendant's conviction of first degree assault, and any error in that regard would therefore have been harmless. The judgment of the court of appeals is therefore reversed.