CHIEF JUSTICE COATS delivered the Opinion of the Court.
¶ 1 Johnson sought review of the court of appeals' judgment reversing jury verdicts in his favor on personal injury claims against Schonlaw and VCG Restaurants. At the close of the case, the district court overruled the objections of Schonlaw and VCG to its announced decision to allow the alternate to deliberate to verdict with the other jurors. The court of appeals concluded that the trial court had erred in allowing an alternate juror to participate in jury deliberations over the *347 objection of a party, and that the error gave rise to a presumption of prejudice, which remained unrebutted by Johnson, and therefore required reversal.
¶ 2 Because the error in this case did not affect the substantial rights of either Schonlaw or VCG, it should have been disregarded as harmless, as required by C.R.C.P. 61. The judgment of the court of appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.
I.
¶ 3 Albert Johnson filed suit against VCG Restaurants Denver, Inc., d/b/a PT's All Nude, its managing agency, and a number of its employees, including Ryan Lee Schonlaw, asserting claims arising from injuries he sustained just outside the nightclub at closing. One of the defendants was dismissed before trial, and of the remaining defendants, the jury returned verdicts finding Schonlaw liable on claims of battery and intentional infliction of emotional distress and VCG liable for battery, intentional infliction of emotional distress, and negligent supervision. The district court ultimately entered judgments of $74,452.83 against Schonlaw and $246,462 against VCG.
¶ 4 While there was conflicting testimony about the altercation in which Johnson was injured, it appeared undisputed that Johnson suffered serious facial injuries requiring surgery, caused either by a blow inflicted by Schonlaw or by Johnson's face coming into contact with the ground as the result of that blow or lost footing during a struggle with Schonlaw and at least one of the club's other employees. It was also undisputed that the employees involved in the confrontation, or "courtesy patrol members," were all substantially larger than the 5'10'', 168-pound Johnson, two of whom were described as former University of Colorado football players, one weighing 365 pounds; and that a taxi driver called 911 to report what he characterized as a guy getting "beaten and choked."
¶ 5 The jury was instructed on the defendants' theory that the "courtesy patrol members" were exercising their legal rights and/or the legal rights of their employer, VCG, in preventing Johnson from regaining access to the club and in escorting him away from the club. In addition to the elements of battery, intentional infliction of emotional distress, and negligent supervision and training, the jury was instructed on the affirmative defenses of consent, self-defense, defense of another, defense of real property, and comparative negligence.
¶ 6 After the close of the evidence, the district court asked the parties if they would agree to allow the alternate juror, who had been permitted without objection to participate in pre-deliberation discussions, to deliberate with the six regular jury members. Johnson agreed, but Schonlaw and VCG objected. The district court overruled their objection, indicating that it considered the matter to be within the court's discretion, and it instead instructed the jury that all seven jurors, including the alternate, would deliberate to a verdict. The jury deliberated over the course of some three days. On the third and final day of deliberations, the jurors sent a note to the court indicating that they could not come to an agreement on punitive damages. Johnson then withdrew his punitive damages claim and shortly thereafter the jury returned its verdicts, signed by all seven members.
¶ 7 On direct appeal, the court of appeals reversed and remanded for a new trial, concluding that whatever discretion may be permitted a trial court by C.R.C.P. 47(a)(5) with regard to pre-deliberation discussions does not extend to allowing an alternate to deliberate with the regular jurors and, similarly, that any discretion granted at section 13-71-142, C.R.S. (2018), to retain the alternates when the jury retires to deliberate does not conflict with the express requirement of Rule 47(b) for the court and parties to agree before permitting an alternate juror's actual participation in deliberations. Having found that the district court therefore erred in permitting the alternate to participate over the objection of a party, the intermediate appellate court further found, in reliance on People v. Boulies, 690 P.2d 1253, 1255-56 (Colo. 1984), a more-than-quarter-century-old criminal case from this court, that the participation of the alternate raised a presumption *348 of prejudice requiring reversal unless rebutted, and that the presumption remained unrebutted by Johnson.
¶ 8 Johnson petitioned for review solely on the question whether permitting the alternate to deliberate in this civil case was an error subject to the harmless error analysis dictated by C.R.C.P. 61, as distinguished from an error raising a presumption of prejudice requiring reversal in the absence of adequate rebuttal.
II.
¶ 9 Unlike the defendant in a criminal prosecution, the parties to a civil proceeding in this jurisdiction are not guaranteed a jury trial by either the federal or state constitution. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 432, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("The Seventh Amendment ... governs proceedings in federal court, but not in state court."); Scholz v. Metro. Pathologists, P.C., 851 P.2d 901, 906 (Colo. 1993) (The Colorado Constitution "does not guarantee a trial by jury in civil cases as a matter of right."). Rather, the right to a jury trial in civil cases in this jurisdiction is derived from C.R.C.P. 38 and largely reflects the former distinction between actions at law and actions in equity. See Kaitz v. Dist. Ct., 650 P.2d 553, 555 n.3 (Colo. 1982) ("[T]he law-equity distinction continues to survive for the purpose of determining whether there is a right to a jury trial in a civil action."). The constitution and statutes of this jurisdiction, however, do govern the number of jurors making up a jury in civil actions in which jury trials are both available and demanded. See Colo. Const. art. II, § 23 ("[A] jury in civil cases in all courts ... may consist of less than twelve persons, as may be prescribed by law."); § 13-71-103, C.R.S. (2018) ("A jury in civil cases shall consist of six persons, unless the parties agree to a smaller number, which shall be not less than three."). And by supreme court rule, alternate jurors are expressly permitted to "deliberate and participate fully with the principal jurors in considering and returning a verdict" if the court and parties agree. C.R.C.P. 47(b).
¶ 10 Whether or not the presumption of prejudice that we articulated in Boulies, requiring rebuttal of prejudice beyond a reasonable doubt by the People, 690 P.2d at 1255-56, would therefore have applied to a civil jury in any event, refinements in the law governing the nature and remedies for error occurring in the trial process in general, and the presence and use of alternate jurors in particular, have substantially undermined our analysis in Boulies, even with regard to the criminal context in which it was intended, as we make clear in James v. People, 2018 CO 72, 426 P.3d 336, also announced today. Quite apart from our treatment in Boulies of the presence of an alternate during deliberations as an error of constitutional magnitude and our failure to apply a plain error standard despite the absence of any objection to the court's instruction in Boulies, 690 P.2d at 1256-57, both of which now appear to be in conflict with the Supreme Court's subsequent rationale in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), we noted in James that in the absence of structural error, our holding in People v. Novotny requires an "appropriate case specific, outcome-determinative analysis" in evaluating the harmfulness of an error, 2014 CO 18, ¶ 2, 320 P.3d 1194, 1196. James, ¶ 20, 426 P.3d at 341. And in Laura A. Newman, LLC v. Roberts, we extended our holding in Novotny to the harmless error analysis required by C.R.C.P. 61 in civil cases, expressly abandoning prior case law mandating automatic reversal for error in jury selection that effectively deprives a party of his full use of peremptory challenges. 2016 CO 9, ¶ 26, 365 P.3d 972, 978.
¶ 11 In James we also rejected the notion that the participation of an alternate during deliberations, at least where that participation was not permitted by the court in bad faith, see Novotny, ¶ 23, 320 P.3d at 1202, could defy harmless error analysis, even where the defendant has a constitutional right to a jury trial. James, ¶ 21, 426 P.3d at 341. That proposition applies with equal if not greater force in the case of an intrusion on the deliberations of a jury both the right to which and the prescribed number of jurors for which exist only by statute or rule. As civil trial error governed by C.R.C.P. 61, the *349 unauthorized participation of an alternate in civil jury deliberations must be disregarded as harmless if it does not affect the substantial rights of the parties. We have long held that an error affects a substantial right only if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." Roberts, ¶ 24, 365 P.3d at 978 (emphasis omitted) (quoting Bly v. Story, 241 P.3d 529, 535 (Colo. 2010) ); see also Banek v. Thomas, 733 P.2d 1171, 1178 (Colo. 1986) (tracing this formulation of the harmless error standard of C.R.C.P. 61 and Crim. P. 52(a) through People v. Quintana, 665 P.2d 605 (Colo. 1983), to Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) ). Because an error impairing the basic fairness of the trial would effectively constitute error in the nature of structural error, requiring reversal without more, the erroneous participation by an alternate juror, which we have held does not in and of itself amount to structural error, James, ¶ 21, 426 P.3d at 341, could avoid being disregarded as harmless only if it substantially influenced the outcome of the case.
¶ 12 In addition to making clear that the harmless error standard requires an evaluation of the likely impact of any error on the outcome of the proceeding at issue, we have also indicated that the question of prejudicial impact cannot be reduced to a specific set of factors. People v. Roman, 2017 CO 70, ¶ 14, 398 P.3d 134, 138 ; Crider v. People, 186 P.3d 39, 43 (Colo. 2008). While the strength of the evidence supporting a verdict is often an important consideration, so too is the specific nature of the error in question and the nature of the prejudice or risk of prejudice associated with it. Roman, ¶ 14, 398 P.3d at 138. Therefore, although overwhelming evidence supporting a verdict may be sufficient in and of itself to determine that a trial error is harmless, even in the absence of such overwhelming evidence, the harmlessness of erroneously allowing an alternate to deliberate in a civil case must remain a function of the risk of prejudice associated with that particular kind of error, under the circumstances in which the error occurred.
III.
¶ 13 One-sided as the physical altercation in this case may have been, not only the credibility of disparate witness accounts but also the reliability of the witnesses' perceptions and reasonableness of their actions, as well as the adequacy of VCG's training of its employees, were not clearly matters as to which the evidence of liability was overwhelming. An assessment of the likelihood of prejudice resulting from allowing participation by the alternate juror in the absence of the agreement of both parties, nevertheless, must ultimately depend upon the rationale for legislatively dictating a specific number of jurors for civil juries and the risk of prejudice associated with erroneously allowing an alternate to be added to that number.
¶ 14 As the Supreme Court has held in characterizing the twelve-man requirement of common-law juries as "a historical accident" and as "wholly without significance 'except to mystics,' " the number of jurors itself is not an "essential feature" of the right to a jury trial such that it should be understood as implied in the Sixth Amendment, much less as incorporated in the due process clause of the Fourteenth Amendment. See Williams v. Florida, 399 U.S. 78, 100, 102, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). While we have construed the state constitution to provide for no right to a jury trial in civil proceedings at all, it clearly contemplates a jury of twelve, where jury trials are otherwise allowed, unless a lesser number is prescribed by law, Colo. Const. art. II, § 23, and the statute providing for the number of jurors in civil cases sets that number at six, unless the parties agree to some smaller number not less than three, § 13-71-103. Forerunner provisions of this formula, which date to the earliest days of statehood, strongly suggest that even the number six was chosen as a figure of practical sufficiency rather than limitation, providing as they long did for the right of any party to increase that number to twelve by merely depositing a required fee with the clerk of court. See, e.g., G.L. 1877 § 580; § 78-7-3, C.R.S. (1963).
¶ 15 In addition, the Rules of Civil Procedure purport to extend the number of *350 jurors to include alternates, upon the agreement of the court and parties. Whether it succeeds or not, C.R.C.P. 47(b) appears to confine its extension of jurors beyond the number six to cases in which there is agreement of the court and parties solely to avoid conflict with the statute-not as an indication that any number greater than six without agreement would actually risk prejudicing a party. While the risk of prejudice associated with depriving a defendant of the number of jurors to whose unanimous agreement of liability he is statutorily entitled seems clear enough, the same cannot be said of finding him liable only upon the agreement of an even greater number of jurors. This is especially the case where, as here, the additional juror has been vetted and chosen in the same manner as the other jurors and has already been permitted, without challenge, to participate in pre-deliberation discussions with the other jurors.
¶ 16 Were a court to erroneously permit the participation of an alternate in violation of statute or rule other than in good faith, the question of whether the error would amount to structural or trial error would clearly require a different analysis. See Rivera v. Illinois, 556 U.S. 148, 157, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009) ; Novotny, ¶ 23, 320 P.3d at 1202. Although the defendants in this case objected to the court's decision to allow the alternate to deliberate, they did not suggest that the court lacked discretion to do so, as distinguished from merely abusing its discretion. And although the court of appeals found that the district court erred in believing its discretion to permit pre-deliberation discussions with the other jurors extended to permitting the alternate to actually deliberate over the objection of a party, there was no suggestion, and no basis to suggest, that the district court acted in bad faith.
¶ 17 In light of the evidence and circumstances of this case, we can say with fair assurance that the court's error in permitting the alternate juror, who was indistinguishable from the other jurors in all meaningful respects, to deliberate and participate fully with the principal jurors in considering and returning a verdict, notwithstanding its failure to secure the agreement of all parties, did not substantially influence the outcome of the case. The error therefore did not affect the substantial rights of the defendants.
IV.
¶ 18 Because the error in this case did not affect the substantial rights of either Schonlaw or VCG, it should have been disregarded as harmless, as required by C.R.C.P. 61. The judgment of the court of appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.
JUSTICE HART concurs in the judgment.
JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.
JUSTICE HART, concurring in the judgment.
¶ 19 I concur in the majority's judgment concluding that the error in this case was harmless. However, I part with the majority in its reliance on James v. People, 2018 CO 72, 426 P.3d 336. In James, also announced today, the majority held that challenges to the presence of alternate jurors in jury deliberations during criminal proceedings should be reviewed for harmless error, not presumed prejudice. I joined in the James concurrence, concluding that presumed prejudice was the appropriate standard of review. I perceive no conflict between the majority's conclusion here and the concurrence's analysis in James because criminal and civil proceedings are fundamentally different. Whereas the United States and Colorado Constitutions afford defendants in criminal prosecutions the right to a jury trial, parties to civil proceedings in Colorado must timely demand and advance statutory fees to obtain jury trials in cases where the right to a jury even exists. See U.S. Const. amend. VI ; Colo. Const. art. II, § 23. And, unlike criminal proceedings that strictly require deliberation by a twelve-person jury, the number of jurors permitted in civil jury trials may be agreed upon by the parties, so long as they comply with the statutory framework. See Colo. Const. art. II, § 23 ; Crim. P. 23(a)(1) ; see also § 13-71-103, C.R.S. (2018)("A jury in civil cases shall consist of six persons, *351 unless the parties agree to a smaller number, which shall not be less than three."). Moreover, although not permitted in criminal proceedings, alternate jurors in civil cases may "deliberate and participate fully with the principal jurors" when the court and parties agree. C.R.C.P. 47(b). As such, I discern no error in affording criminal defendants a heightened standard of review to alternate juror challenges-specifically, presumed prejudice-than parties in civil proceedings. Accordingly, while I disagree with the majority's reliance on James, I respectfully concur in its judgment.