23CA1650 Peo v March 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1650
El Paso County District Court No. 22CR2599
Honorable Monica Jo Gomez, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lamar March,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Kimberly Alderman Penix, Alternate Defense Counsel, Fort Collins, Colorado, for Defendant-Appellant

¶ 1     Defendant, Lamar March, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted first degree murder, first degree burglary, first degree assault, violation of a protection order, and three crime of violence sentence enhancers. We affirm.

## I.     Background

¶ 2     In June 2021, before the events giving rise to this case, March severely injured the victim, his girlfriend, and ultimately pleaded guilty to second degree assault.  The district court in that case entered a mandatory protection order against March, listing the victim as the protected party and requiring, among other things, that March vacate the victim's home.

¶ 3     In May 2022, law enforcement responded to a disturbance at the victim's apartment complex and found her "crying hysterically." Officers observed that the victim appeared injured, her hair had been "sheared off," and she had tried to use stools to prevent someone from entering her apartment.  The victim told law enforcement that March had threatened to kill her.

¶ 4     After being transported to the hospital, the victim told the treating forensic nurse examiner that March had punched, kicked,

and choked her, causing her to lose consciousness and urinate on herself. The victim also reported that March had forced her to cut off her own hair to cause her embarrassment.

¶ 5    The prosecution asserted that March subjected the victim to intense and repeated domestic violence, in part, because he feared the victim was cheating on him. Before trial, the prosecution gave notice under CRE 404(b)(3) that it intended to introduce evidence of other acts related to March's 2021 assault of the victim. Over March's objection, the trial court ruled that most of the prosecution's proposed other acts evidence related to the 2021 incident was admissible to show March's state of mind, motive, and common scheme or plan.

¶ 6    The jury found March guilty of attempted first degree murder, first degree burglary, first degree assault, and violation of a protection order. It further found that March caused serious bodily injury when committing attempted murder, burglary, and assault, rendering those offenses crimes of violence. *See* § 18-1.3-406(2)(a)(I)(B), C.R.S. 2025.

¶ 7    The trial court sentenced March to forty-eight years in the Department of Corrections' custody. As relevant to this appeal, the

court's sentence encompassed (1) thirty-two years for attempted first degree murder and (2) sixteen years for first degree burglary, running consecutively to the sentence for attempted murder.

¶ 8     On appeal, March contends that (1) the trial court erred by admitting other acts evidence under CRE 404(b); (2) insufficient evidence supported his convictions for first degree assault, first degree burglary, and attempted first degree murder; and (3) his sentence violates his right to due process.  We address each contention in turn.

## II.     CRE 404(b)

¶ 9     March argues that the trial court abused its discretion under CRE 404(b) by admitting extensive other acts evidence.  We disagree.

### A.     Additional Background

¶ 10    Based on the court's pretrial order under CRE 404(b), the prosecution introduced significant other acts evidence related to the 2021 incident.  The following is illustrative:

- The victim's sister testified that she checked on the victim at March's apartment after she had been unusually noncommunicative in the days leading up to

the 2021 incident; receiving no response at the apartment, the victim's sister contacted the police for a welfare check. Officers later forced open the apartment door, found the victim inside, and took her out on a stretcher due to her injuries.

- The victim's sister testified that the victim was "unrecognizable" at the hospital — her face was "three times" bigger than normal, her eyes were swollen shut, she had a cigarette burn on her leg, she suffered bruises "from head to toe," and blood was everywhere. The victim relayed to her sister that March had threatened to kill her and had tortured her "for a few days."

- Four additional family members testified for the prosecution regarding the 2021 incident, including the victim's brother-in-law, who said the victim appeared "[b]eat up" after the assault; March's sister, who testified that March felt he could "hurt" the victim and was "losing control of himself"; and March's mother and stepfather, who expressed concern for the victim after not hearing from her.

- The detective who investigated the 2021 incident testified that the victim initially couldn't communicate at the hospital due to the severity of her injuries. The detective also testified that he (1) found blood on walls, window blinds, and clothes in March's apartment; and (2) interviewed March's sister, who said that March had admitted to choking and threatening to kill the victim.

- The forensic nurse examiner, who had reviewed the victim's medical history, testified that the victim suffered a subdural hematoma following the 2021 incident.

- The prosecution introduced several photographs of the victim's injuries, March's apartment, and other evidence related to the 2021 incident.

¶ 11 The court issued several limiting instructions regarding the other acts evidence, informing the jurors that evidence regarding the 2021 incident was being admitted for a limited purpose of showing motive, intent, common scheme or plan, and preparation.

B. Standard of Review and Applicable Law

¶ 12 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Vanderpauye*, 2023 CO 42, ¶ 23. A court

abuses its discretion when it misapplies the law or when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 13 Because March preserved his challenge through a timely objection, we review any error in the court's evidentiary ruling for nonconstitutional harmless error. *Pernell v. People*, 2018 CO 13, ¶ 22. Under this standard, we will reverse only if a reasonable probability exists that the court's error contributed to the defendant's conviction. *People v. Roman*, 2017 CO 70, ¶ 13.

¶ 14 CRE 404(b) governs the admissibility of other acts evidence. The rule prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." CRE 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." CRE 404(b)(2). And as with all evidence, other acts evidence is admissible only if relevant and if its probative value isn't substantially outweighed by the danger of unfair prejudice. CRE 401-403.

¶ 15    Under CRE 404(b), the court must first determine, by a preponderance of the evidence, whether the defendant committed the prior acts. *See People v. Vasquez*, 2022 COA 100, ¶ 74. After making this threshold finding, the court next analyzes the prior act evidence under our supreme court's four-part *Spoto* framework. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). Under *Spoto*, evidence of extrinsic acts that suggest bad character is admissible only if (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the prohibited inference that the defendant acted in conformity with his bad character; and (4) the evidence's probative value isn't substantially outweighed by the danger of unfair prejudice. *See Rojas v. People*, 2022 CO 8, ¶ 27 (citing *Spoto*, 795 P.2d at 1318-19).

¶ 16    In cases involving domestic violence, other acts of violence may be admitted "to show a common plan, scheme, design, identity, modus operandi, motive, or guilty knowledge or for some other purpose." § 18-6-801.5(3), C.R.S. 2025. In such cases, the General Assembly has declared that "evidence of similar transactions" involving domestic violence "can be helpful" and sometimes

7

"necessary" because domestic violence is "frequently cyclical in nature, involves patterns of abuse, and can consist of harm with escalating levels of seriousness." § 18-6-801.5(1); *see also People v. Cross*, 2023 COA 24, ¶ 22 (By enacting section 18-6-801.5, the legislature intended to "place[] its finger on the scale in favor of admitting evidence of prior acts of domestic violence in prosecutions involving domestic violence.").

### C.   Analysis

¶ 17     At the outset, we note that March doesn't dispute the trial court's threshold finding that the prosecution proved, by a preponderance of the evidence, that March committed the prior acts involving the 2021 incident.

¶ 18     Turning to the first *Spoto* prong, the court properly found that the evidence regarding the 2021 incident related to March's intent, motive, and plan.  These were material facts because (1) March's intent to harm or kill the victim was an essential element for multiple charges that he faced, *see* §§ 18-3-102(1)(a), 18-3-202(1)(a), C.R.S. 2025; and (2) March claimed that the victim assaulted him first and that he merely defended himself. *See People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009)

8

(evidence of the defendant's prior violent acts was admissible to prove intent); *People v. Torres*, 141 P.3d 931, 934 (Colo. App. 2006) ("Evidence of a prior act of domestic violence is relevant to show the defendant's intent to harm the victim, rather than merely to frighten her.").

¶ 19    As to the second prong, the court acted within its discretion by finding the evidence logically relevant.  Evidence that March had previously threatened the victim and beaten her tended to make it more likely that March intended to harm or kill the victim rather than merely defend himself.  *See Torres*, 141 P.3d at 934 ("[T]he evidence [of a prior act of domestic violence] had a tendency to show that it was more probable that [the defendant] intended to commit the acts of domestic violence."); *see also Yusem v. People*, 210 P.3d 458, 465 (Colo. 2009) ("Because the prior act evidence is logically relevant to demonstrate [the defendant's] mental state, it necessarily is relevant to rebut his claim of self-defense.").

¶ 20    As to the third prong, the court appropriately found that the evidence of the 2021 incident bore logical relevance independent of the impermissible inference that March acted in conformity with his bad character.  Recall, both the 2021 incident and the crimes in

9

this case involved March making threats and inflicting bodily injury against the same victim, his girlfriend. *See Cross*, ¶ 22 ("[U]nder the third prong of *Spoto*, acts of [a] 'defendant's violent behavior toward the same victim in an ongoing relationship' are admissible in domestic violence cases." (citation omitted)). And in both incidents, the evidence showed that March choked the victim and marred her physical appearance — first by burning her leg with a cigarette in 2021 and then by shearing off her hair in this case. The prosecution therefore tied the prior act evidence "with sufficient specificity to the charged offenses," allowing the jury to properly consider it independent of any prohibited propensity inference. *McBride*, 228 P.3d at 227.

¶ 21    While evidence of the 2021 incident no doubt injected some bad character evidence into the trial, *Spoto*'s third prong doesn't demand the complete absence of a bad character inference; it merely requires that the proffered evidence be logically relevant independent of that inference. *People v. Lancaster*, 2022 COA 82, ¶ 47.

¶ 22    For two reasons, we aren't persuaded otherwise by March's reliance on *Yusem*, 210 P.3d at 466-67. First, *Yusem* didn't involve

a defendant's acts of domestic violence, let alone multiple acts against the same victim.  Under March's view, other acts evidence involving domestic violence could never be admitted in a later domestic violence case because it would necessarily suggest that the defendant acted in conformity with that bad character.  But that view "cannot be squared with the General Assembly's directive in section 18-6-801.5(3)."  *Cross*, ¶ 23.  Second, unlike in *Yusem*, where the other act and the charged offense lacked similarity, 210 P.3d at 467, we have already concluded that the prosecution tied the evidence of the 2021 incident with sufficient specificity to March's charged offenses.  And, in any event, CRE 404(b) doesn't require similarity for the other acts evidence to be admissible. *Yusem*, 210 P.3d at 467.

¶ 23    As to the fourth prong, we perceive no abuse of discretion in the court's finding that the probative value of the other acts wasn't substantially outweighed by the danger of unfair prejudice.  The probative value of the 2021 evidence was high because March's intent and motive were central disputed issues at trial.  *See People v. Herron*, 251 P.3d 1190, 1198 (Colo. App. 2010) (under *Spoto*'s fourth prong, the court considers the importance of the material

11

fact for which the evidence is offered and whether the fact is disputed). And although the court admitted a large quantum of other acts evidence regarding the 2021 incident, we can't say that decision amounted to an abuse of discretion given that the main witness to the incident — the victim — testified she didn't remember anything prior to waking up in the hospital. *See id.* (considering "the availability of alternative means of proof" under *Spoto*'s fourth prong).

¶ 24     We also conclude that the court mitigated any danger of unfair prejudice by giving several limiting instructions informing the jury that evidence of the 2021 incident could be considered only for limited purposes. Absent evidence to the contrary, we presume that the jury followed the court's limiting instruction. *People v. Rowe*, 2012 COA 90, ¶ 46.

¶ 25     Affording the other acts evidence its maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected, *Bondsteel v. People*, 2019 CO 26, ¶ 50, and mindful of the General Assembly's guidance in section 18-6-801.5, we perceive no abuse of discretion in the court's ruling under *Spoto*'s fourth prong.

¶ 26    Accordingly, we conclude that the trial court didn't abuse its discretion by admitting the evidence of the 2021 incident under CRE 404(b).

## III.    Sufficiency of the Evidence

¶ 27    March next challenges the sufficiency of the evidence supporting his convictions for first degree assault, first degree burglary, and attempted first degree murder. Specifically, he argues that insufficient evidence allowed the jury to find beyond a reasonable doubt that he (1) caused serious bodily injury by strangling the victim; (2) entered the victim's residence unlawfully or with the intent to commit a crime; and (3) acted with the specific intent to kill the victim. We aren't persuaded.

### A.    Standard of Review and Applicable Law

¶ 28    We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). Applying a "substantial evidence test," we consider whether the relevant evidence, viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the

defendant is guilty of the charges beyond a reasonable doubt. *Johnson v. People*, 2023 CO 7, ¶ 13. Under this test, relevant evidence includes both direct and circumstantial evidence. *McCoy v. People*, 2019 CO 44, ¶ 63.

### B.  First Degree Assault by Strangulation

¶ 29    As relevant here, a person commits assault in the first degree by strangulation if, "[w]ith the intent to cause serious bodily injury, he or she applies sufficient pressure to impede or restrict the breathing or circulation of the blood of another person by applying such pressure to the neck . . . of the other person and thereby causes serious bodily injury." § 18-3-202(1)(g), C.R.S. 2025. Serious bodily injury is any bodily injury that, "either at the time of the actual injury or at a later time, involves a substantial risk of death." § 18-1-901(3)(p), C.R.S. 2025.

¶ 30    At trial, the forensic nurse examiner testified as an expert in strangulation and concluded that the victim suffered serious bodily injury. She supported her conclusion by testifying to the following:

- The victim relayed at the hospital that March had strangled her three times and that she had lost consciousness and urinated on herself.

14

- Any loss of consciousness during strangulation poses substantial risk of death.

- The victim showed signs of strangulation, such as trouble breathing, painful and difficult swallowing, blurry vision, tingling all over her body, neck pain, and a sore throat.

- The victim displayed abrasions and bruising to her upper lip, which aren't "uncommon" with strangulation.

¶ 31    The jury also heard from one of the responding police officers who first spoke with the victim. The officer testified that the victim had "dark markings" around her neck, a "larger red area" on her chest, and "slightly swollen" cheeks. The prosecution introduced multiple pictures of the victim, taken by the officer, that generally confirmed the officer's observations.

¶ 32    Viewing this evidence in the light most favorable to the prosecution, the jury could reasonably find beyond a reasonable doubt that March inflicted serious bodily injury on the victim by strangulation. § 18-3-202(1)(g).

¶ 33    March urges us to consider the conflict between the victim's reports to police and the physical evidence introduced at trial. As examples, he points to the lack of urine on her clothing and the

15

absence of trauma to her neck during the medical examination. But the task of resolving conflicts or inconsistencies in the evidence fell to the jury. *See People v. Plancarte*, 232 P.3d 186, 192 (Colo. App. 2009). In addition, March's argument ignores the forensic nurse examiner's testimony that (1) the dark and red markings initially observed by the officer may have "dissipated" before she examined the victim and (2) strangulation doesn't always result in observable external or internal injuries.

## C.  First Degree Burglary

¶ 34  "A person commits first degree burglary if the person knowingly enters unlawfully . . . in a building or occupied structure with intent to commit therein a crime . . . and if in effecting entry or while in the building or occupied structure . . . the person . . . assaults or menaces any person . . . ." § 18-4-202(1), C.R.S. 2025.

¶ 35  The mandatory protection order entered after March's 2021 assault prohibited March from, among other things, harassing, molesting, intimidating, retaliating against, or tampering with the

victim.[1]  *See* § 18-1-1001(1), C.R.S. 2025.  The prosecution alleged that March intended to commit the crime of violating a protection order when he unlawfully entered the victim's apartment.

¶ 36     According to one of the responding officers, the victim said that she didn't know how March gained entry into her apartment. She suspected March might have made a copy of her key.  The victim had also placed stools in front of her apartment door to block access.  Viewing this evidence in the light most favorable to the prosecution, the jury could reasonably infer that March entered the victim's apartment unlawfully.  *See People v. Bondurant*, 2012 COA 50, ¶ 63 (concluding sufficient evidence supported the defendant's first degree burglary conviction where the defendant entered the residence "unexpectedly" and "without prior arrangements" or invitation).  While March testified that he entered the apartment with the victim's permission, the jury was free to reject his testimony.  *See Plancarte*, 232 P.3d at 192.

---

[1] The trial court took judicial notice that the protection order was modified in April 2022, shortly before March's crimes in this case, so that March could contact the victim and visit her home (presumably because he and the victim share two children).  The protection order's other provisions, however, remained in place.

¶ 37 We also conclude that sufficient evidence allowed the jury to find beyond a reasonable doubt that March entered the apartment with the intent to commit a crime therein — specifically, violating a protection order. *See* § 18-6-803.5(1), C.R.S. 2025. Based on the evidence that March choked the victim three times and sheared off her hair, the jury could reasonably infer that March entered the apartment intending to harass, molest, intimidate, retaliate against, or tamper with the victim. *See People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009) ("An actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence.").

### D.    Attempted First Degree Murder

¶ 38 A person commits murder in the first degree if, "[a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person." § 18-3-102(1)(a). "A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." § 18-2-101(1), C.R.S. 2025.

¶ 39    We conclude sufficient evidence permitted the jury to find beyond a reasonable doubt that March acted after deliberation and with the intent to kill the victim. In addition to the evidence that March choked the victim three times, one of the responding officers testified that the victim, while at the hospital, reported that March threatened her by saying, "I'm going to kill you, you're not going to make it out alive and no one is going to save you this time." March's mother and the victim's sister also testified that March had previously threatened to kill the victim. And, as discussed, the jury heard evidence about the 2021 incident in which March severely beat the victim and left her unresponsive. *See People v. Jensen*, 55 P.3d 135, 140 (Colo. App. 2001) (the prosecution may prove the defendant's culpable mental state in a homicide trial through "evidence of prior threats, mistreatment, or malice by the defendant toward the victim").

¶ 40    Viewed in the light most favorable to the prosecution, the jury could reasonably infer from this evidence that March acted after deliberation and with the intent to kill the victim. *See People v. Harmon*, 2025 COA 38M, ¶¶ 31-32; *People v. Bogle*, 743 P.2d 56, 58 (Colo. App. 1987).

¶ 41    Accordingly, sufficient evidence supported March's convictions for first degree assault, first degree burglary, and attempted first degree murder.

## IV.   Sentencing

¶ 42    March contends that the trial court committed several errors that affected his forty-eight-year prison sentence.  We perceive no basis to reverse.

### A.    Advisement on Sentence Enhancements

¶ 43    March first argues that, contrary to Crim. P. 10, the trial court never advised him at his arraignment about the crime of violence sentence enhancement charges that he faced.

¶ 44    But March didn't designate the arraignment transcripts in his designation of record, thus foreclosing our review.  *See* C.A.R. 10(d)(3); *People v. Shifrin*, 2014 COA 14, ¶ 39.  Even after March supplemented the record (after the People pointed out the arraignment transcripts were omitted), no transcript of the arraignment appears in our record.  Without the arraignment transcripts, we must presume that the trial court properly advised March of the sentence enhancement charges or that such advisement wasn't necessary under the circumstances.  *See LePage*

*v. People*, 2014 CO 13, ¶¶ 15-16 (describing presumption of regularity, including the appellant's duty to present a record that discloses the alleged error). Indeed, a minute order dated June 2, 2022, reflects both that March waived reading and advisement of the charges and that he appeared with counsel. *See* Crim. P. 10(e) ("If the defendant appears with counsel, the information or indictment need not be read and no waiver of said reading is necessary.").

## B. Consecutive Sentencing

¶ 45 Next, March asserts that the trial court erred by imposing consecutive sentences for his attempted first degree murder and first degree burglary convictions. According to March, the prosecution contended at trial that all charges arose from a single event.

¶ 46 "When a defendant is convicted of more than one offense, the decision to impose concurrent or consecutive sentences is within the sound discretion of the trial court." *People v. Rodriguez-Ortiz*, 2025 COA 61, ¶ 84. But the court's discretion is restricted in certain circumstances. For example, under section 18-1.3-406(1)(a), C.R.S. 2021, which applied to March's offenses, the court

must "sentence a person convicted of two or more separate crimes of violence arising out of the same incident so that his or her sentences are served consecutively rather than concurrently."[2] Because March's attempted first degree murder and first degree burglary convictions both qualified as crimes of violence, *see* § 18-1.3-406(2)(a)(I)(B), (2)(a)(II)(B), (H), C.R.S. 2021, the court had no choice but to impose consecutive sentences.

¶ 47    Moreover, even putting aside section 18-1.3-406(1), a trial court is generally required to impose concurrent sentences only when the defendant is convicted of multiple crimes based on identical evidence. § 18-1-408(3), C.R.S. 2025. In this case, March's attempted murder and burglary convictions weren't necessarily based on identical evidence. Evidence regarding March copying the victim's key, the stools blocking her apartment door, and March's protection order, for example, was generally relevant only to the burglary charge. By contrast, evidence regarding March's deliberation and intent to kill the victim, while necessary for the jury to convict March of attempted first degree murder,

---

[2] This provision is now codified at section 18-1.3-406(1)(b), C.R.S. 2025, and applies to offenses committed on or after July 1, 2023.

22

wasn't essential to the burglary charge.  *See People v. Muckle*, 107 P.3d 380, 383 (Colo. 2005) ("[T]he mere possibility that the jury may have relied on identical evidence in returning more than one conviction is not sufficient to trigger the mandatory concurrent sentencing provision.").

## C.    Proportionality

¶ 48    March also argues that his forty-eight-year sentence is excessive and disproportionate.  March requested that the trial court conduct a proportionality review but filed his notice of appeal before the court could rule, thereby divesting it of jurisdiction.  *See People v. Hampton*, 696 P.2d 765, 771 (Colo. 1985).

¶ 49    We are a court of review, not first view.  *People v. Spomer*, 2025 COA 39M, ¶ 43.  Given the case's current posture and because inquiry into the specific facts and circumstances of March's crimes may be necessary, *see Wells-Yates v. People*, 2019 CO 90M, ¶ 69, we decline to address March's proportionality arguments in the first instance and conclude they are better addressed during the postconviction stage.  *See People v. Session*, 2020 COA 158, ¶ 51; *see also People v. Crawley*, 2024 COA 49, ¶ 7

("A proportionality challenge implicates the constitutionality of a sentence and is thus cognizable under Crim. P. 35(c).").

### D. Victim's Request for Leniency

¶ 50 Finally, March argues that the trial court failed to give the victim's request for leniency at sentencing "appropriate weight." In requesting leniency, the victim told the court that the events described at trial were "taken out of proportion" and that March was a "great father" and a "good man."

¶ 51 Although victims have the right to be heard at sentencing, § 24-4.1-302.5(1)(d)(IV), C.R.S. 2025, a defendant's ultimate sentence rests with the trial court's "wide discretion," subject to constitutional and statutory restraints. *People v. Walters*, 632 P.2d 566, 567 (Colo. 1981).

¶ 52 We discern no abuse of discretion in the court's sentence. Because his attempted first degree murder and first degree burglary convictions qualified as crimes of violence, the court's sentences of thirty-two years for the former (a class 2 felony) and sixteen years for the latter (a class 3 felony) both fell within the permissible statutory range. *See* § 18-1.3-401(1)(a)(V.5)(A), (8)(a)(I), C.R.S. 2025. Moreover, the trial court heard the prosecution's domestic

violence expert testify that victims of domestic violence often recant or minimize their abuser's crimes. Given this, we can't say that the trial court abused its discretion by declining to give the victim's statement more weight.

¶ 53 Accordingly, we perceive no error in the trial court's sentence that requires reversal.

## V. Disposition

¶ 54 We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.